IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CANDACE MARTIN**                                                                    **PLAINTIFF**

**V.**                                      **CASE NO.: 1:16-cv-205-JCG**

**CAROLYN W. COLVIN,**                                            **DEFENDANT**
*Acting Commissioner of Social Security*

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Candace Martin seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act. The Commissioner found that Martin was not disabled, despite her severe impairments of "essential hypertension, peripheral arterial disease, ischemic heart disease, hypertensive vascular disease, [and] late effects of cerebrovascular disease (cerebrovascular accident)." (ECF No. 10, at 14). Having reviewed the submissions of the parties, the record, and relevant law, the Court finds that Martin's Motion for Summary Judgment (ECF No. 13) should be DENIED and the decision of the Commissioner AFFIRMED.

I. Background

Martin was born in 1958. She received a certificate in medical billing and coding in December 2012. She has not worked in this field but has looked for work. Martin has been employed as a retail sales cashier clerk, casino cashier, and child

care worker. She lives with her mother and daughter. She and her daughter share the responsibilities of caring for Martin's elderly mother.

Martin underwent coronary artery bypass surgery on June 8, 2012, and a right carotid endarterectomy on August 7, 2012. She was recommended to have a left carotid endarterectomy, but she declined. On July 1, 2013, Martin suffered a stroke. After the stroke, Martin went back to work as a retail cashier clerk. According to Martin, she was fired a month later because she had difficulty with leg pain and stocking shelves. She maintains that she is unable to work due to pain that is primarily caused by standing and walking.

Martin protectively filed her application on September 27, 2013, alleging disability since August 29, 2013, due to "a stroke, heart surgery, high blood pressure, [and] high cholesterol." (ECF No. 10, at 168). The agency denied Martin's applications, and she requested a hearing before an administrative law judge (ALJ), which was held on January 8, 2015. On January 15, 2015, the ALJ issued a decision finding Martin not disabled.

The ALJ utilized the five-step sequential evaluation process to find Martin not disabled under the Social Security Act. *See* C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).[1] At step one, the ALJ found that Martin had not engaged in

---

[1] A claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing

substantial gainful activity since her alleged onset date of August 29, 2013. At step two, the ALJ found that Martin had the severe impairments of "essential hypertension, peripheral arterial disease, ischemic heart disease, hypertensive vascular disease, [and] late effects of cerebrovascular disease (cerebrovascular accident)." *Id.* at 14. At step three, the ALJ determined that Martin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, for presumptive disability.

Next, the ALJ determined that Martin retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b), except she could not be exposed to unprotected heights or hazardous machinery. *Id.* at 16. At step four, the ALJ, relying on the testimony of a vocational expert (VE), concluded that Martin was able to perform her past relevant work as a retail sales cashier clerk, casino cashier, and child care worker, each as they were actually performed by her and as generally performed in the national economy. *Id.* at 22. Martin was therefore found not disabled from the alleged onset date of August 29, 2013, through the date of the ALJ's decision.

The Appeals Council denied Martin's request for review, making the ALJ's January 15, 2015, decision the Commissioner's final decision for purposes of judicial

---

past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

review. Having exhausted her administrative remedies, Martin commenced the present action by Complaint filed June 15, 2016. (ECF No. 1). Martin moved for summary judgment on November 28, 2016. (ECF No. 13).

## II. Standard of Review

A review of the Commissioner's denial of benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence in the record as a whole, and (2) whether the Commissioner applied the correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence must be more than a mere scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The Court's role is to scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This is so, even if the Court determines that the evidence could allow for a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). A finding of no substantial evidence is appropriate only if there is "a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

## III. Discussion

Martin submits that the ALJ erred in two ways: (1) by failing to consider whether she had an impairment or combination of impairments that met or equaled the criteria for a neurological disorder, namely Listings 11.04 and 11.18; and (2) by

assigning an RFC that is not supported by substantial evidence. *Id.* at 13. Martin asserts that her case should be remanded to the ALJ for a proper evaluation of whether she meets a neurological disorder Listing.

The Commissioner responds by submitting that "Plaintiff did not meet the requirements for either Listing 11.04 or 11.18, and therefore no harmful error occurred due to the absence of a specific discussion of the Listing section by the ALJ." (ECF No. 15, at 8). The Commissioner asserts that the ALJ's decision is supported by "substantial evidence, including the unremarkable examinations noted . . ., Plaintiff's activities of daily living, and the opinions from non-examining State agency physicians, Timothy Bessent, M.D., and Carol Kossman, M.D., who both reviewed the evidence of record and opined that Plaintiff could perform light work." *Id.* at 12.

A.  Neurological Disorder Listings 11.04 and 11.18

"The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work." *Heckler v. Campbell,* 461 U.S. 458, 460 (1983). At step three, the Commissioner considers the medical severity of the claimant's impairment(s) and determines whether the impairment(s) meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). A claimant who establishes that she suffers from an impairment listed in Appendix 1 will be considered disabled without further inquiry. *Id.* The Listings

> are descriptions of various physical and mental illnesses
> and abnormalities, most of which are categorized by the

body system they affect. Each impairment is defined in term of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley,* 493 U.S. 521, 529 (1990).

The burden of proof to meet a listing is "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). The responsibility for determining whether a claimant meets a listing is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Listings 11.04 and 11.18 provide:

> **11.04 <u>Vascular insult to the brain</u>, characterized by A, B, or C:**
>
> A. Sensory or motor aphasia resulting in ineffective speech or communication (see 11.00E1) persisting for at least 3 consecutive months after the insult.
>
> OR
>
> B. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult.
>
> OR
>
> C. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a) and in one of the following areas of mental functioning, both persisting for at least 3 consecutive months after the insult:
>
>     1.    Understanding, remembering, or applying information (see 11.00G3b(i)); or
>     2.    Interacting with others (see 11.00G3b(ii)); or

3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
4. Adapting or managing oneself (see 11.00G3b(iv)).

. . .

**11.18 <u>Traumatic brain injury</u>, characterized by A or B:**

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the injury.

OR

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following areas of mental functioning, persisting for at least 3 consecutive months after the injury:

1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
2. Interacting with others (see 11.00G3b(ii)); or
3. Concentrating, persisting, or maintaining pace (see 11.00G3(iii)); or
4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 11.04, 11.18.

Plaintiff submits that "[t]he evidence of record demonstrates that subsequent to her stroke, Martin continued to experience disorganized motor function in her right arm and leg, and marked limitation in mental functioning that persisted for at least 3 consecutive months." (ECF No. 14, at 11). Martin's brief states:

> Martin reported that one month after her stroke, she attempted to return to work, but she was fired because she

> could not walk back and forth to stock shelves. Martin also testified that after her stroke, she had increasing difficulty with her legs, and that walking causes pain and numbness in her legs and feet.
>
> While Martin testified that she could perform tasks such as doing laundry, going grocery shopping, and caring for her elderly mother, she can generally only do so with the help of her daughter.
>
> Martin further reported on October 21, 2013, that her impairments affected her ability to lift, squat, stand, walk, sit, talk, climb stairs, see, and use her hands. Martin noted that she experienced pain upon standing or walking, could not sit more than 15 minutes due to pain, had difficulty holding things, and slurred words if she talked too much.

*Id.* at 12.

Martin's allegations are based almost entirely on her own subjective complaints. The extent of impairment alleged by Martin is not corroborated by objective medical evidence, as the ALJ found. A finding that a claimant's medical condition meets a listing may not be made without objective medical evidence that satisfies the specific listing criteria – neither subjective statements nor unsupported assertions suffice. *Sullivan,* 493 U.S. at 530-32; 20 C.F.R. §§ 404.1525(c), 416.925(c); SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996).

Plaintiff admits that there is not objective medical evidence showing that she meets all of the criteria for Listings 11.04 and 11.18 but posits that had the ALJ fully and fairly developed the record, "he could have certainly adduced evidence that might have altered the result and demonstrated that Martin met the criteria of Appendix 1 Listing 11.04 or 11.18." (ECF No. 14, at 12-13). The ALJ is not required to order additional evidence when the record is sufficient to establish whether the

claimant is disabled. The ALJ's ability to further develop the record must be balanced against the fact that it is Plaintiff's burden to "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley,* 493 U.S. at 531 (emphasis in original); 20 C.F.R. § 416.920(d).

Both parties rely on *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). This suit does not present the problem identified in *Audler* of "a bare conclusion [ ] beyond meaningful judicial review." *Id.* at 448. Here, even though the ALJ did not reference Listings 11.04 and 11.18 in her step three analysis, she did, in her RFC analysis, discuss an absence of evidence of lasting neurological impairment. The ALJ's decision notes that on the day of her stroke, July 1, 2013, Plaintiff "did not have any other neurological deficits" beyond "some slurred speech," though "for the most part, she was able to converse easily and understandable, with some intermittent expressive aphasia, and sometimes had difficulty finding a word, and her blood pressure was elevated." (ECF No. 10, at 19).

"[A]pproximately three months following her stroke, the claimant did not have any complaints and she was doing well. She only requested medication refills for cholesterol and hypertension. Review of symptoms was normal." *Id.* at 20. The ALJ's decision notes that on April 25, 2014, and August, 4, 2014, all examinations, including neurological, were normal, with no findings of functional limitation. *Id.* The CFHC records refute Martin's allegation that she experienced neurological issues "for at least 3 consecutive months" following her July 1, 2013 stroke, as required by both Listings 11.04 and 11.18.

The existence of substantial evidence to support the ALJ's decision is not cast into doubt because the ALJ did not expressly mention Listings 11.04 or 11.18. The medical records from Coastal Family Health Center (CFHC) for more than a year following Martin's stroke document regular examinations where Martin showed a normal gait, normal motor skills, normal mental functioning, and normal neurological functioning. *Id.* at 319-61. Martin seeks to minimize the significance of these records, but the Court may not reweigh the evidence. The unremarkable medical examinations following Plaintiff's stroke belie a finding that Martin met the "demanding and stringent" criteria of a neurological disorder Listing.

The ALJ found Plaintiff's position also contradicted by her daily activities. Though Martin stated she received help with household chores, she acknowledged that she was able to perform them, as well as run errands, drive, cook, pay bills, read, and play computer games. *Id.* at 21. The ALJ was especially persuaded by a October 13, 2014, note in the records of CFHC where Plaintiff reported that she was exercising by walking three to four days a week for a total of 10-15 hours (ECF No. 10, at 340). This reported exercise contradicted Plaintiff's allegation that she could no longer work because she could not stand and walk for long periods.

Even if the ALJ erred by failing to specifically address Listings 11.04 and 11.18, the error was harmless because Plaintiff has not shown that her substantial rights were affected. *See Audler,* 501 F.3d at 448. To show that substantial rights were affected "typically requires a claimant to demonstrate that his impairment satisfies the criteria of a particular listing." *Pickett v. Colvin,* Civil Action No. 3:15-

cv-700-TSL-LRA, 2017 WL 439978, *2 (S.D. Miss. Jan. 6, 2017), *rep. and rec. adopted,* 2017 WL 422812 (S.D. Miss. Jan. 31, 2017). Martin acknowledges that there is not objective evidence to satisfy all criteria for the Listings. (ECF No. 14, at 12-13). There is not medical evidence of (1) sensory or motor aphasia resulting in ineffective speech for at least three consecutive months, (2) disorganization of motor function in two extremities for at least 3 consecutive months, or (3) limitation in physical and mental functioning for at least 3 consecutive months. The ALJ was not required to develop the record further. Remand is not warranted. *See Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1988); *Alexander v. Astrue,* 412 F. App'x 719, 722 (5th Cir. 2011).

B.  Residual Functional Capacity

Martin contends that the ALJ's determination that she has the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b) is not supported by substantial evidence. However, the evidence that the ALJ utilized to reach her decision has been discussed. The ALJ did not fully credit Martin's testimony because her claims of disabling limitations did not correspond with the medical records showing normal examinations following Martin's stroke; and did not correspond with Martin's daily activities. The inconsistencies between the medical records and Plaintiff's reported activities provide substantial evidence supporting the ALJ's determination.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff Candace Martin's Motion for Summary Judgment (ECF No. 13) is **DENIED** and the decision of the Commissioner **AFFIRMED**.

**SO ORDERED**, this the 6th day of June, 2017.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE